We're going to now move to Appeal 22-2174. United States v. Jamic Johnson. We're going to begin, Mr. Patton, with you. Good morning, Your Honors. I'm Tom Patton. I represent Jamic Johnson, and I'm going to talk to you today about the difference between a reasonable versus mixture and substance of methamphetamine, and how that impacts a proper guideline calculation in Mr. Johnson's case. The pre-sentence report did a fine job in paragraph 16 of coming up with a conservative estimate of how much of a mixture and substance of methamphetamine Mr. Johnson was responsible for. The problem was is it then treated that reasonable estimate of mixture and substance as methaxyl, and that resulted in a base offense level of 32 rather than a base offense level of 30. Now, the defense counsel didn't object, so it's under plenary review, but this court has made clear in many cases, but Carnell would be one of the leading cases on methamphetamine, talking about how the distinction between court has to take to make sure that if you're going to use methaxyl, you as the district judge have made the necessary findings to support a finding that it really is methaxyl. That just didn't happen here. You're always, when you're dealing with relevant conduct and it's based on statements that, you know, the statements aren't the most accurate in the world because they're getting interviewed, well, how many times did you get meth? I don't know. Was it five times? No. Was it ten times? So you're getting, you are getting estimates. And there just, there was of course no lab testing of the relevant conduct meth, the stuff that Mr. Johnson talked about. And one of the other things that the PSR didn't do was try and take steps to make sure there wasn't double counting. I mean, the police seized 109.6 grams from Mr. Jamek's man cave. That's 3.86 ounces of methamphetamine itself. And when they were using the estimates in paragraph 16, when they're just saying, hey, I've bought, you know, we bought about an ounce at a time at first for $800 and the most I ever bought was four ounces for I think it was 600. Well, you know, what he got found in his house was pretty darn close to four ounces. And so, you know, normally or oftentimes I should say in the PSRs, they'll say, hey, we're not counting, you know, some of this extra relevant conduct because, you know, we got to make sure that we're not double counting both the stuff that we seized, which could be included and you would think as a matter of logic would have been included in Mr. Johnson's statements about how much the amount that he's purchased is almost four ounces that got seized in this case. Do you agree that if the court had used the information that Mr. Johnson provided that was set forth in paragraph 12 of the PSR, if it had used that as well as the meth that was found during the search that the court could have gotten to the 150? I don't think so, Your Honor, because not without some further fact finding on is there double counting. I think, you know, the government wants to interpret the statements in paragraph 12 as like seven ounces. I think we are more like in line with six ounces. In our merits brief we put... I think the question is when Johnson admitted that he had purchased multiple ounces for $600 per ounce and that he had purchased from Morningstar. That wasn't included in your calculations. Right, but I'm not sure that... It's not clear. I don't think it's clear from the pre-sentence report. If these three times he's buying for Morningstar, if included in that is where he's getting some of that for himself, right? Because that's a fairly common thing to have happen in drug cases. If you assume that Morningstar was higher up the chain than Mr. Johnson, so Mr. Johnson was doing some of Mr. Morningstar's work for him and getting meth and giving it to him, we don't know if included in these three times that he got meth for Morningstar, if that included in those three times are some of the times when he got for himself either an ounce... User quantity? Is that what you're saying? Not even user quantity, just some of the distribution quantity because it's not clear that he didn't say, hey, in one of the three times I bought for Morningstar, that's one of the times I can't tell you that that is what happened, but I don't think the government can say that's not what happened. The statement, according to the PSR... How does it impact that this is plain error? If you had objected, obviously you'd be in a stronger position, but this is plain error, so how does that impact the information for paragraph two? Because the plain error review is a review of what the district court actually did, and I think that's the answer, Your Honor, and what the district court did at the sentencing hearing, and this is at appendix page eight, she said, I'm adopting the findings of the pre-sentence report, and in the statement of reasons, which is the record 78, page one, she's got the box checked off, she's accepting the PSR, and so paragraph 16 says what it says, and that's the only factual finding in the PSR with amounts, and so the plain error review is a review of what the district judge actually found, not different theories that we could come up with of how other findings she could have made. Now, look, also because we're on plain error, the government is allowed on remand to introduce additional evidence about amounts. Is it possible, if it gets remanded, that his sentence could actually be higher, that he could actually go to a level 34? I thought about that. I actually spoke with because you'd have to get up to 500 grams of methaxyl to get above a base offense level 32, and we're talking about, even under the governance theory, barely getting above 150, so you'd have to more than double methaxyl to bump him up to a higher offense level, so I don't think that's probably a realistic problem. It certainly is there, right? If it's a full remand and the government puts that in, it's a possibility. Does Mr. Johnson know that's a potential risk? Yes. I haven't spoken to him personally when I spoke with Judge Henderson, who was not a judge when he was doing that. That sounds so good, though, Judge Henderson. I know. Well, not so good for our office. That's true. But, yeah, he believed he discussed that. It's just a thing that we normally discuss with clients. We know how thorough Mr. Henderson was. As far as the judge's statement that this is the sentence I would have given anyway, number one, if that's what she actually said, I don't think under Asbury that's enough of an oculating statement, but if you actually go back and read what she said, she said this is the sentence the court would have imposed even if the defendant's objections had been sustained. The objections were to Paragraphs 4, 5, and 6 that detailed just statements that cooperators had made. The only specific information about drug amounts was in Paragraph 6 that talked about when he got arrested after trying to hide Morningstar's truck. They had THC vape cartridges, one marijuana joint, and I think six oxycodone pills. Those were the only exact drug amounts that they objected to. And so her statement isn't even saying this is the sentence I would give even if there wasn't 150 grams of methaxyl involved. It's just even if I had granted or sustained the defendant's objection, it's what I would have done. And so just factually, I don't think it inoculates. And under Asbury, that can't meet the legal standard of inoculation. Otherwise, no guideline error would ever be reviewable. And if I could, I'd reserve the rest of my time. Very good. The remainder of your time will be reserved. We'll now move to Mr. Whalen. Thank you, Your Honors. May it please the court. Nathaniel Whalen here on behalf of the United States of America. Because the district court did not plainly err in finding Mr. Johnson was responsible for more than 150 grams of actual methamphetamine, this court should affirm. I think we kind of agree with the defense on one thing, which is we are asking this court to affirm on a basis and a calculation not explicitly considered by the district court. I think where we kind of split ways is whether this court can do that. And the defense's position is you're reviewing the court's methodology. I don't think that's supported by the case law. I think the real question is, is the actual finding that they're challenging, the 150 grams, is that plainly erroneous? And to make that determination, this court looks at the entire record as a whole and says, is it plainly wrong to conclude the defendant was responsible for more than 150 grams of actual methamphetamine? So the record in the whole, I guess to give an example, if the court says 2 plus 2 equals 4, and it should have said 2 times 2 equals 4, the question is, is 4 plainly erroneous? And it's our position that it's not for the reasons set forth in our brief. Judge St. Eve asked some questions about our methodology. And I do think what we put forward in our brief is a reasonable interpretation of the PSR. And I understand the defense's position is that it's not clear. It's not clear whether it's double counting. It's not clear whether paragraph 12 is talking about multiple transactions. Well, on plain error standard of review, that dooms the defense's case. They have to show it was plainly wrong to get to 150 grams of actual methamphetamine. And so ambiguity. You agree that the district court didn't distinguish between actual and mixture? The district court is making the calculation. The district court sentenced on 150 of actual. Paragraph 16 does have some mathematical errors in it. It doesn't support. We agree that the PSR is wrong, that the ounce that he says he distributed should have been treated as 100% actual, which it looks like it probably was mistakenly. And so I do think there is an error in the math. But there was not a plain error in the actual sum, if you will, of 150 grams of actual methamphetamine. But you need to look to paragraph 12 to conclude that there wasn't an error in the actual sum. That is correct, Your Honor. You can't make that determination just based on paragraph 16. That's correct, Your Honor. But this court should look at the record as a whole. And it should look at paragraph 12 because that's the defendant's admissions. And that's where the defendant says that he bought one ounce at a time at first for $800 and then multiple ounces for $600. And he says that's for distribution. Then he goes on and he says he bought from a supplier for Morningstar three different times. A reasonable reading of that paragraph is that we're talking about at least five separate transactions. One ounce for $800, multiple ounces, which at a low-end estimate is going to be two ounces, for $600. That's three ounces right there. And then three times for Morningstar, one of which he says was four ounces. So if you take those three ounces, add them to the four ounces for Morningstar, we get to seven ounces. Using the defendant's proposed methodology, which is supported by the case law, and I apologize for going through the math, Your Honor. I know we all went to law school. Using the methodology proposed by the defendant of using the lowest purity, that 39 percent, if you multiply the 39 percent by the seven ounces and add to the amount of actual seized, we do get above 150 grams of actual methamphetamine. And the paragraph 16 didn't address the multiple 600s, correct? That is correct, Your Honor. So that's where one of the errors was. Yeah, I think paragraph 16, I don't want to say it cut a corner, but I think it basically said if you take a low-end estimate and just take kind of the bare minimum of what he's admitting to, we get to over 150 grams. Mr. Whalen, I'm going to ask you the same question I asked Mr. Patton. Is there any chance if this goes back on a remand that Mr. Johnson could be facing the next level, a level 34? Your Honor, I would be surprised, but I don't want to say definitively no because I've not actually examined the drug ledgers. I do think the drug ledgers could support a higher quantity because those were seized and they do, as reflected in the PSR paragraph 10, they contain methamphetamine amounts consistent with dealing and not personal consumption. Without having reviewed the drug ledger itself, I can't say for sure that that's going to get us above 500 grams. I would be surprised, but I do know Mr. Johnson has a pretty extensive history of drug dealing, and so I can't say here definitively one way or the other. Mr. Whalen, when you look at the kind of looking at your framework and the ounces that Mr. Johnson purchased from Morningstar, there's nothing in the record other than the 39% pure that they found from his house that would indicate what percentage purity those particular ounces would be. Is that correct? There are two different purities in the record. There's the 83% and then there's the 39%. I don't think there's anything in the record that definitively says 39% is the amount that was purchased for Morningstar and 83% is the amount that was purchased from the other supplier. We can't tie it that definitively, and so our proposed methodology, which the defense originally proposed in its brief, is take the 39% as a conservative estimate and extrapolate that across all the amounts the defendant said he purchased, both for Morningstar and for distribution. And I guess if I were playing the role of the district judge, I would ask, well, what's the basis for the 39% for those other ounces? Why couldn't it be 25? Why couldn't it be 20? Why couldn't it be something lower? Yeah, and, Your Honor, that's a good question. The 39% is tied to the facts of this case, and so I think what this court said in cases like Holland's is you can't pull a number out of thin air. And so some of those other numbers that Your Honor is talking about are numbers that aren't really tied to the facts of this case. Here we have two numbers. We have 83% and 39%. Well, presumably the district court could also say, well, because I don't have any basis to assess the purity of those ounces, I'm just not going to consider them. Your Honor, the court could do that. I think the— And so the next question is why don't we let the district court do that? I mean do that analysis. Why should we sitting up here do that? Well, Your Honor, I think the reason that the district court— I guess let me step back and answer the first question. I don't think it's an appropriate use of judicial fact-finding under 2D1.1 Note 5 to say I'm just not going to put any purity on the amounts that were never seized. 2D1.5 says if the scope of the conspiracy is more than that seized, you have to make a reasonable approximation. But the district court could say that the government failed to prove to meet its burden by preponderance of the evidence to meet that standard, right? The court could say that. I don't quite know how to reconcile that with the fact that the guidelines are telling the court that it shall make a determination, and the guidelines have this emphasis on purity as well. I think you run—it is a hard calculation, right? And that's why this court talks about how it's not an exact science, and it can't just be nebulous eyeballing, but you have to kind of have some indicia of reliability. And so it's our position that an indicia of reliability is supported by that 39% figure of the amount tested. Had the defendant objected, perhaps we could have introduced further evidence from agents to talk about, typically in the Fort Wayne area, we're at 80% most of the time, and these drugs look like this amount seized, and there's other evidence I suspect that could have come in had the defendant objected. And that's really part of the problem that we're encountering here, right? This court is stuck with the record that it has here in paragraphs 12 and paragraph 16 because the defendant didn't object. Had the defendant objected, there are DAA experts. We could have introduced evidence of the ledger. We could have introduced the video that's reflected in paragraph 12. You know, those statements in paragraph 12 came from his confession. We could have introduced that to help support the finding. But it wasn't objected to, and so this court has the record that it has in front of it. Further to that point, Mr. Whalen, Carnell was about two years prior to the sentencing. That's obviously got to seep into the probation office, got to seep into the advocacy for both sides to sharpen this point of purity and sharpen the point of the amounts. That background is what Mr. Patton's arguing should inform us. Your thoughts on that? Yeah, Carnell deals with a different fact pattern. Carnell's a case where there's no drugs from the conspiracy actually tested. Carnell's where this court found that you can't rely on the statements of users and dealers and drugs unrelated to the conspiracy to extrapolate that onto the drugs that were actually tested and the drugs in part of this conspiracy. So in that case, you have zero drugs that are ever tested that are part of the conspiracy. In this case, we have two quantities, 68 grams and 33 grams, that were tested. And this court has said in cases like Jared and Marshall and Hans and Nelson that when you have amounts that are actually tested, you can extrapolate that. And Carnell did leave over the question of what's kind of the minimum number of tested that you can extrapolate on the unseized amounts. But again, I don't think that cuts in the defendant's favor because we're here on plain error standard of review. And if this court hasn't resolved the issue and said, you know, you need more than one, you need more than two, then the district court's not going to plainly err on relying on one or two tests to extrapolate across the board. Your Honor, if I may quickly, the defendant in docket entry 63 did object to paragraph 16. That's the objections to the PSR. So to say that 16 wasn't objected to I don't think is an accurate statement. We do think the district court said that she would have imposed the same sentence regardless and she did deal with an objection to the guideline in drug quantity, albeit not this objection. So we do not think that the defendant has shown that there's a prejudicial error. Unless this court has any further questions, we would ask that you affirm. Thank you. Thank you. Mr. Patton, we'll give you three minutes on rebuttal. Thank you, Your Honors. As my friend says, we're stuck with the record that we have, but as he also admitted, yeah, paragraph 16's wrong and it's the only paragraph in the PSR that purports to calculate drug weights. And so it's plain error. How do you respond to his argument that we should look at the full record, including paragraph 12? Because for paragraph 12 just isn't clear. You don't have purities for everything else, and I think Judge Lee is correct that you can't automatically, I would argue that it would be error for a district judge to say, we took 30 grams and tested it, and it's got this purity. We're holding you accountable for a kilogram of other meth, and we're just going to assume that it's all the same purity without any other evidence. Now, I understand we didn't object, so the government didn't have an incentive to put that evidence in, but the remedy for that is when you remand, it's a full remand, and the government gets to bring in whatever evidence it wants, as opposed to when there's an objection and it gets sent back, they don't get that second bite at the apple. But paragraph 12 just is, I would submit, just is not clear enough that this court could find absolutely there's more than 150 grams of methamphetamine actual. Now, look, if there were other drugs involved where they calculated converted drug weight, and that other converted drug weight combined gets you over the 150 threshold, or whatever threshold for combined weight you need to get to to get to offense level 32, that's when you could say, hey, look, fine, it's error not calculating the purity correctly, but when you combine all the other drugs, we clearly get into the base offense level 32, so it's just not plain error because it doesn't affect substantial rights because you're going to have the same base offense level. In this court, in United States v. Millers, when it was talking about relevant conduct and not doing the nebulous eyeballing, it talked about that district judges really ought to try and err on the side of caution because we put this patina of accuracy in it by saying, well, the ounce is 28.35 grams, and so then we take this times this and divide it by this, we get these exact amounts. But they're coming off statements where somebody's like, well, I think I bought about this amount this many times. You don't know if they got the full amount or if they got shorted. I think it's common sense, but it also is a wise exercise of discretion to say I am going to use caution and err on the side of caution, and here we don't have that. We don't know if there's double counting with the four ounces that he's got, and Judge Lisa, we should have Judge Brady do that in the first instance. We didn't object, and I get that, but it's still plain error and should go back so that Judge Brady can make these determinations as an initial matter. Thank you. Thank you, Mr. Patton. Thank you, Mr. Whalen. Excellent advocacy by both of you. The case will be taken under advisement.